UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |  |
|---|---|---|
| THOMAS R. PAUL, | ) | NO.  CV-08-5039-LRS |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANTS' |
| -vs- | ) ) | MOTION FOR SUMMARY JUDGMENT |
| CITY OF SUNNYSIDE, et al., | ) ) |  |
| Defendants. | ) ) |  |

     BEFORE THE COURT is Defendants' Motion For Summary Judgment (Ct. Rec. 31) filed August 4, 2009 and noted without oral argument for September 25, 2009.[1]  The Court having considered the written argument of counsel, enters this Order.

## I. BRIEF BACKGROUND

     Plaintiff asserts a civil rights claim under 42 U.S.C. §1983. Plaintiff alleges the following claims against Defendants:  1) deprivation of substantive due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by Defendant City of Sunnyside ("City" or "Sunnyside"), Defendant Mark Kunkler (City Attorney), Defendant Robert Stockwell (City Manager), Defendant

---

     [1]The last paper was filed in conjunction with this motion on September 28, 2009, after the hearing date noted.

ORDER - 1

1 Jim Restucci (City Council), Defendant Pablo Garcia (City Council),

2 Defendant Theresa Hancock (City Council) and Defendant Ed Prilucik

3 (City Council), stemming from the revocation of conditional use

4 permit; 2) violation of first amendment right of free speech by

5 Defendant City and Defendant Kunkler, stemming from removal of signs

6 and misdemeanor charges; 3) deprivation of substantive due process

7 rights by violation of equal protection law, based upon alleged

8 unequal treatment of Plaintiff by Defendant Thomas Storms (building

9 official), Defendant Kunkler and Defendant Stockwell; and 4)

10 conspiracy to deprive of equal protection rights, based upon an

11 alleged conspiracy of Defendant Storms, Defendant Kunkler and

12 Defendant Stockwell.

13 **II.   SUMMARY OF FACTS**

14 In 1990, a billboard was constructed on Plaintiff's Sunnyside

15 property pursuant to a conditional use permit issued to Plaintiff's

16 lessee, Obie Media.  In 2002, the billboard was destroyed in a

17 windstorm.  A new conditional use permit was issued to rebuild the

18 billboard.  In 2004, Plaintiff terminated his lease with Obie Media,

19 and the billboard was removed.  Complaint, ¶ 14.

20 On or about September 13, 2004, Plaintiff submitted to the City

21 an application for a conditional use permit to construct a new

22 commercial billboard on his property in the same location as the

23 former Obie Media billboard.  In his application, Plaintiff proposed

24 to make the conditional use permit conditional upon final location of

25 planned improvements to South 1st Street.  Complaint, ¶ 15.  On

26 November 17, 2004, the application was considered by the Sunnyside

Board of Adjustment.  The City staff opposed the issuance of the conditional use permit, allegedly because the final location of planned improvements to South 1st Street had not yet been determined. The Board approved the conditional use permit application.  Complaint, ¶ 16.

The City staff asked the Board to reconsider its approval.  On December 1, 2004, the Board of Adjustment denied the staff's motion for reconsideration.  Complaint, ¶ 17.  In approximately December 2004, Plaintiff began placing on his property a number of non-commercial signs, expressing political views concerning his displeasure with certain City employees and officials, notably City Manager Stockwell.  Plaintiff also constructed five sheds on concrete slabs on the property.  Complaint, ¶ 18.

The City staff appealed the Board's approval of the conditional use permit application to the City Council.  On January 24, 2005, the City Council voted to reverse the Board's decision.  At the meeting, Council Member Restucci expressed his objections to Plaintiff's signs expressing political views.  On or about February 14, 2005, the City Council issued a written decision reversing the Board's decision. Complaint, ¶ 19.  On or about January 28, 2005, the City issued a stop work order with respect to the five sheds.  Complaint, ¶ 20.

On March 15, 2005, Plaintiff filed an action in the Superior Court of the State of Washington for Yakima County under the Land Use Petition Act (LUPA), 36.70C RCW, appealing the action of the City Council. On May 11, 2005, Plaintiff and the City settled the LUPA action.  On May 24, 2005, pursuant to the settlement agreement, the

City issued to Plaintiff a conditional use permit for the construction
on his property of a commercial billboard, providing that the
billboard not be located within 20 feet of any property line.
Complaint, ¶ 21.

On October 20, 2005, Plaintiff began construction of the
billboard at a location alleged to be approximately 30 feet from the
nearest property line by digging a post hole.  On October 27, 2005,
after Plaintiff placed a 26-foot long wood and steel post in the post
hole and as he was preparing to pour concrete, Defendant Storms issued
a stop work order, alleging that the billboard was 14.5 feet from the
property line in violation of the conditional use permit.  Plaintiff
nevertheless poured the concrete based on his concern that the
unsecured post would represent a hazard.  Complaint, ¶ 23.

The stop work order was issued based on a survey, recorded on or
about November 3, 1978, that the Defendants interpreted as showing a
right-of-way extending 30 feet from the centerline of South 1st Street.
Plaintiff alleges that the true right-of-way extended only 15 feet
from the centerline.  Complaint, ¶ 24.  City Manager Stockwell and
City Attorney Kunkler caused a resolution to revoke the May 24, 2005
conditional use permit to be placed on the agenda of the November 28,
2005 City Council meeting.  Complaint, ¶ 25.  On November 28, 2005,
the City Council voted to revoke the conditional use permit.  Council
Members Garcia, Hancock, Restucci, and Prilucik voted in favor of the
resolution to revoke the conditional use permit.  Complaint, ¶ 26.

### III.    SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials

ORDER - 4

1    when there is no dispute as to the facts before the court. *Zweig v.*

2    *Hearst Corp*., 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025

3    (1975).  Under Rule 56 of the Federal Rules of Civil Procedure, a

4    party is entitled to summary judgment where the documentary evidence

5    produced by the parties permits only one conclusion. *Anderson v.*

6    *Liberty Lobby, Inc*., 477 U.S. 242, 106 (1986); *Semegen v. Weidner*, 780

7    F.2d 727 (9th Cir. 1985).  Summary judgment is precluded if there

8    exists a genuine dispute over a fact that might affect the outcome of

9    the suit under the governing law.  Anderson, 477 U.S. at 248.

10    The moving party has the initial burden to prove that no genuine

11    issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith*

12    *Radio Corp*., 475 U.S. 574, 586 (1986).  Once the moving party has

13    carried its burden under Rule 56, "its opponent must do more than

14    simply show that there are some metaphysical doubt as the material

15    facts." *Id.*  The party opposing summary judgment must go beyond the

16    pleadings to designate specific facts establishing a genuine issue for

17    trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

18    In ruling on a motion for summary judgment, all inferences drawn

19    from the underlying facts must be viewed in the light most favorable

20    to the nonmovant. *Matsushita*, 475 U.S. at 587.  Nonetheless, summary

21    judgment is required against a party who fails to make a showing

22    sufficient to establish an essential element of a claim, even if there

23    are genuine disputes regarding other elements of the claim. *Celotex*,

24    477 U.S. at 322-23.

25    ///

26    ///

ORDER - 5

**IV. DISCUSSION**

**A. Discovery**

Plaintiff complains that Defendants have failed to fully respond to two sets of requests for production. Ct. Rec. 40 at 3. On August 5, 2009, the Court ordered the Defendants to produce all relevant e-mails in the manner in which they are kept in the usual course of business, and audio recordings of certain city council meetings. Ct. Rec. 39. The Court order also provided that Plaintiff was entitled to depose the Defendants during a 25 day period after the Defendants comply with the Order. *Id.*

Plaintiff suggests that additional discovery from Defendants may elicit facts regarding the Defendants' efforts to pressure the Plaintiff into removing or painting over certain hand-made signs he posted on his property. Ct. Rec. 40 at 3-4. The Court notes that Plaintiff apparently availed himself of the right to take additional depositions after the original close of discovery as permitted by the Court and does not show he was precluded from taking those depositions desired by him. While he speculates that further discovery might be helpful based on his assertion that more e-mails should be available from City records-the argument is speculative at best.

Defense counsel has indicated that he is unaware of any additional searches for e-mail that can be performed or any discovery demands Defendants have not attempted to fully comply with. Ct. Rec. 51 at 4. Based on Defendants' representations, the Court finds that there is no failure to meet discovery obligations by Defendants and it is merely speculation, on the part of Plaintiff, that he has not been

1  able to present facts essential to justify his opposition to the

2  instant motion.

3  **B. Deprivation of Substantive Due Process Rights**

4      *1. Defendants' Argument*

5      Defendants primary argument is that the action taken by Defendant

6  Sunnyside, Mark Kunkler, Robert Stockwell, Jim Restucci, Pablo Garcia,

7  Theresa Hancock and Ed Prilucik, namely the revocation of Plaintiff's

8  conditional use permit, was not arbitrary or unreasonable under

9  *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996).

10     Based on Defendants' version of facts, Plaintiff received a

11 conditional use permit ("CUP") to construct a billboard on property he

12 owns in Sunnyside after a settlement of a lawsuit with Defendant City.

13 The agreement stated that any construction would have to be at least

14 twenty feet from any property line.  Ct. Rec. 33 at 4.  Plaintiff was

15 informed that the location he was prepping was not twenty feet from

16 the City's right-of-way.  Plaintiff was given a notice of correction

17 and then a stop work order.  Plaintiff ignored both and continued

18 working allegedly in violation of municipal codes mandating compliance

19 with correction notices and stop work orders.  *Id.*  The matter was

20 brought to a hearing before the City Council and the CUP was revoked.

21 *Id.*

22     Defendants additionally argue that the individual Defendants

23 (Kunkler, Stockwell, Restucci, Garcia, Hancock, and Prilucik) are

24 statutorily immune from civil liability under RCW 4.24.470 because

25 they are appointed officials of a public agency and acted within their

26 authority, based upon the facts before them.  *Id.*  Defendants assert

that the acts of these individual Defendants were discretionary, within their official powers and pursuant to proper procedure. *Id.* at 5. Moreover, the individual Defendants[2] acted after advice of counsel. *Id.* Defendants urge that even if Plaintiff disputes the accuracy of the thirty foot right-of-way, the Defendant city officials reasonably believed the right-of-way to be accurate based on the city engineer's and city attorney's review of the pertinent documents. *Id.* at 6.

Finally, Defendants contend that the claim against Defendant Sunnyside should be dismissed because there was no constitutional deprivation, and pursuant to *Monell*,[3] municipalities are only liable for violations of civil rights under §1983 if such violations result from the "execution of a government's policy or custom." Defendants point out that Plaintiff has not alleged that liability for this claim, or any claim, is based upon some policy or custom. *Id.* at 8.

### 2. *Plaintiff's Argument*

Plaintiff complains that in revoking a CUP to construct a billboard on his property, Defendants deprived him of his property interest in the CUP without due process of law. Plaintiff argues there is a genuine issue of material fact as to whether or not Plaintiff violated the conditional use permit for a billboard by placing it too close to a property line. Ct. Rec. 40 at 5. Plaintiff contends the location of the property line and whether he placed the billboard too close to that line are in dispute. Plaintiff argues

---

[2]The Court assumes that Defendant Kunkler is excluded from the list of defendants that acted after advice of counsel.

[3]*Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978).

ORDER - 8

1  that just because the City told him that his billboard was less than

2  20 feet from a right-of-way does not establish the factual accuracy of

3  such notification.

4      Under Washington law, Plaintiff explains, statutory dedication of

5  a right-of-way requires the filing of a final plat or short plat by

6  the property owner, and an approval of the filed plat by the City.

7  RCW 58.17.020(3).  Plaintiff states that none of these things happened

8  here.  Ct. Rec. 40 at 7.  Plaintiff urges denial of Defendants'

9  summary judgment request with respect to this claim based on a factual

10 dispute as to the location of the City's right-of-way.

11      Secondly, Plaintiff argues, the CUP required the construction to

12 be at least 20 feet from any property line.  According to Plaintiff,

13 the CUP does not mention  rights-of-way, which are different from

14 property lines.  Plaintiff argues the property line is not 30 feet

15 from the centerline of 1st Street but rather is 15 feet that the

16 parties all understood when the CUP was issued.  Ct. Rec. 40 at 8.

17 Plaintiff concludes that he constructed the billboard nearly 30 feet

18 rather than 14.5 feet from the property line, in compliance with the

19 CUP.

20          *3.  Court's Analysis For Substantive Due Process Violation*
               *Claim*

21

22      Plaintiff, in his complaint, alleges his property interest in the

23 conditional permit issued to him pursuant to the May 11, 2005

   settlement agreement, is a substantive due process right secured by

24 the Fifth and Fourteenth Amendments to the U.S. Constitution.

25

26      The Fourteenth Amendment protects persons from government action

   that is "clearly arbitrary and unreasonable, having no substantial

ORDER - 9

1  relation to the public health, safety, morals, or general welfare."

2  *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996), *cert. denied*, 520

3  U.S. 1240, 117 S. Ct. 1845, 137 L. Ed. 2d 1048 (1997).  The Fourteenth

4  Amendment's substantive due process requirements, however, are

5  preempted when "a particular amendment provides an explicit textual

6  source of constitutional protection against a particular sort of

7  government behavior." *Albright v. Oliver*, 510 U.S. 266, 273-74, 114 S.

8  Ct. 807, 127 L. Ed. 2d 114 (1994).  In other words, if a particular

9  amendment places limits on the type of government conduct challenged

10 by a plaintiff, that amendment rather than "the more generalized

11 notion of substantive due process" must guide the court's analysis of

12 the plaintiff's claim.  *Armendariz v. Penman*, 75 F.3d 1311, 1319-20

13 (9th Cir. 1996).

14      In analyzing a claim in this fashion, the Supreme Court in *Lewis*[4]

15 explained:

16          Because we have "always been reluctant to expand the
           concept of substantive due process," *Collins v. Harker*
17         *Heights, supra*, at 125, 112 S. Ct., at 1068, we held
           in *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865,
18         104 L. Ed. 2d 443 (1989), that "[w]here a particular
           Amendment provides an explicit textual source of
19         constitutional protection against a particular sort of
           government behavior, that Amendment, not the more
20         generalized notion of substantive due process, must be
           the guide for analyzing these claims." *Albright v.*
21         *Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L.
           Ed. 2d 114 (1994) (plurality opinion of REHNQUIST,
22         C.J.) (*quoting Graham v. Connor, supra*, at 395, 109 S.
           Ct., at 1871) (internal quotation marks omitted).

23 *Lewis*, 523 U.S. at 842.

24      Given the Supreme Court's reluctance to expand the scope of

25

26 _____

        [4]*County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

ORDER - 10

1  substantive due process protection, this Court will rely on the more

2  explicit source of protection to analyze the claim rather than the

3  amorphous and open-ended concept of substantive due process. *Albright*

4  *v. Oliver*, 510 U.S. 266, 272 (1994)(plurality opinion).

5         *4. Takings Claim*

6         Based on Plaintiff's complaint, the argument runs that in

7  revoking Plaintiff's CUP, this action amounted to a taking under the

8  Fifth Amendment, as incorporated by the Fourteenth Amendment.

9  Plaintiff, however, does not set forth any arguments asserting that

10 the government has "taken" his property within the meaning of the

11 Fifth Amendment.

12        The Supreme Court has held that two requirements must be

13 satisfied in order for a takings claim to be ripe.  First, "the

14 government entity charged with implementing the regulations [must

15 have] reached a final decision regarding the application of the

16 regulations to the property at issue." *Williamson County Reg'l.*

17 *Planning Comm'n. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186,

18 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985).  Second, the plaintiff must

19 have sought "compensation through the procedures provided by the State

20 for obtaining such compensation." *Id*. at 195, 105 S. Ct. 3108.  If a

21 claim is unripe, federal courts lack subject matter jurisdiction over

22 the claim and it must be dismissed.  *Southern Pac. Transp. Co. v. City*

23 *of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).

24        Under Ninth Circuit precedents, a facial takings claim alleging

25 the denial of the economically viable use of one's property is unripe

26 until the owner has sought, and been denied, just compensation by the

state. *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 406 (9th Cir. 1996), *cert. denied*, 523 U.S. 1059, 118 S. Ct. 1386, 140 L. Ed. 2d 646 (1998); *Levald v. Palm*, 998 F.2d 680, 686 (9th Cir. 1993). The Fifth and Fourteenth Amendments do not prohibit the taking of property; they prohibit the taking of property without just compensation. *Williamson County Williamson County Regional Planning Comm'n. v. Hamilton Bank,* 473 U.S. 172, 194 (1985). Therefore, there is no constitutional injury until the Plaintiff has availed himself of the state's procedures for obtaining compensation for the injury, and been denied compensation. *Id*.

Here, with respect to the Plaintiff's takings claim, he has filed no claim, sought no variance, pursued no administrative remedy, and filed no lawsuit at the state level regarding the November 28, 2005 revocation of the CUP at issue. *Spoklie v. State of Montana*, 411 F.3d 1050, 1057 (9th Cir. 2005)("Until state court has finally ruled on the state takings claim, the federal takings claim is not ripe"). Because the Fifth Amendment prohibits takings "without just compensation," a constitutional violation does not occur until compensation is denied. *Williams County Regional Planning Com'n v. Hamilton Bank of Johnson,* 473 U.S. 172, 195, fn. 13 (1985); *see*, *Suitum v. Tahoe Reg. Planning Agency*, 520 U.S. 725, 734, 117 S. Ct. 1659, 137 L. Ed. 2d 980 (1997). This ripeness requirement applies to facial and as-applied takings challenges. *Spoklie*, 411 F.3d at 1057.

The Court finds that the regulatory takings claim is unripe for review. If a claim is unripe, federal courts lack subject matter jurisdiction over the claim and it must be dismissed. *Southern Pac.*

ORDER - 12

*Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).

Defendants' Motion for Summary Judgment is granted as to the

Plaintiff's 5th Amendment takings claim, which is hereby dismissed.

       *5.  Substantive Due Process Claim*

    Although Plaintiff does not specifically argue why he believes

his Fifth Amendment right was violated under the Takings Clause, he

does argue that Defendant City's action was arbitrary and without a

rational basis, violating the due process owed to him.  *See* Complaint,

¶29.

     Under the *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865,

104 L. Ed. 2d 443 (1989) rule, a substantive due process claim will be

preempted if the asserted substantive right can be vindicated under a

different-and more precise-constitutional rubric.  Even assuming that

some room remains for substantive due process claims in the context of

deprivations of property,[5] Plaintiff's federal substantive due process

claim fails on the merits.

    The Supreme Court, in *Lewis*,[6] ruled that the substantive due

process standard depends on whether the plaintiff is challenging

legislative action or executive action.  When the challenge is to

executive action, as here, the question is whether the government

action is shocking to the judicial conscience.  *See Collins v. City of

Harker Heights*, 503 U.S. 115, 128 (1992).  To establish a violation of

---

    [5]*See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 532, 125 S. Ct.
2074, 161 L. Ed. 2d 876 (2005) (this case answers the question whether
takings jurisprudence or due process doctrine governs).

    [6]*County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140
L. Ed. 2d 1043 (1998).

ORDER - 13

1   substantive due process, the Plaintiff must plead and ultimately prove

2   that the Board's action was "clearly arbitrary and unreasonable,

3   having no substantial relation to the public health, safety, morals,

4   or general welfare." *Sinaloa Lake Owners Ass'n. v. City of Simi*

5   *Valley*, 882 F.2d 1398, 1484 (9th Cir. 1989).

6        In choosing to base his claim for compensation on an alleged

7   violation of substantive due process, the Plaintiff shoulders a heavy

8   burden.  In order to survive the Defendants' summary judgment motion

9   on this claim, the Plaintiff must demonstrate the irrational nature of

10  Defendant City's actions by showing that the City could have had no

11  legitimate reason for its decision. *Halverson v. Skagit County*, 42

12  F.3d 1257 (9th Cir. 1994) (*quoting Kawaoka* v. *City of Arroyo Grande*, 17

13  F.3d 1227, 1234 (9th Cir. 1994) (internal quotations omitted).

14       Plaintiff contends that he has presented evidence sufficient to

15  survive summary judgment, that the action of the Defendant City was

16  not for valid reasons, but that it was an action to punish him for his

17  signs criticizing certain Defendants and to prevent him from

18  developing his property in a manner consistent with the conditional

19  use permit previously granted by the Defendant City.  Defendants, on

20  the other hand, contend that the city council's decision was based, in

21  part, upon advice of counsel, the existence of a survey believed to be

22  accurate, and the opinion of the city engineer, Jim Bridges, as well

23  as the engineers of the street project who brought the matter to their

24  attention in the first place.  The decision was also based upon

25  Plaintiff's failed obligation to obey the city's regulations, i.e.,

26  Plaintiff ignored a correction notice and a stop work order, which

1  were part of his obligations in receiving the use permit.  Ct. Rec. 44
2  at 5.

3      The Court finds that Plaintiff cannot meet the shock-the-
4  conscience standard to survive summary judgment.  It appears from the
5  face of the complaint itself that the Board had rational reasons for
6  its decision revoking the CUP based on legitimate criteria relating to
7  land use, i.e., planned improvements to South 1st Street.  Courts can
8  decide, as a matter of law, that the contested conduct does not
9  violate substantive due process because a reasonable jury could not
10 find that the conduct shocks the conscience.[7]  Plaintiff, in this case,
11 has not met his burden and cites no authority sufficient to state a
12 constitutional deprivation.  Defendants are entitled to summary
13 judgment on Plaintiff's §1983 claim alleging a substantive due process
14 (14th Amendment) violation stemming from the revocation of the CUP.

15     **C. Substantive Due Process and Equal Protection Violation Claim**

16     Plaintiff alleges in his second claim for relief that Defendant
17 City, Defendant Kunkler and Defendant Stockwell deprived him of his
18 substantive due process right to pursue his profession and denied him
19 his equal protection rights by treating him differently that other
20 contractors.

21

22     [7]See *McConkie v. Nichols*, 446 F.3d 258 (1st Cir. 2006) (affirming
23 district court's grant of summary judgment to defendant on substantive
   due process claim on the ground no reasonable juror could find
   defendant's conduct conscience shocking); *Moore v. Nelson*, 394 F. Supp.
24 2d 1365, 1368-69 (M.D. Ga. 2005) (Plaintiff's evidence did not create a
   genuine issue of material fact as to whether defendants' conduct shocked
25 the conscience: "From the evidence before the Court, no reasonable juror
   could find that Defendants' conduct violated Plaintiff's Fourteenth
26 Amendment rights.  Therefore, Defendants are entitled to summary judgment
   on Plaintiff's §1983 claim.")

ORDER - 15

*1. Defendants' Argument*

Defendants assert that Plaintiff has no evidence to substantiate the equal protection violation claim against any of the Defendants. Similarly, Defendants argue, the substantive due process claim lacks any evidence.  The only evidence that Defendant Kunkler had anything to do with these allegations is the statement by Plaintiff that he called and asked him to intervene regarding the building plans. Similarly, the evidence concerning Defendant Stockwell only shows that he responded to Plaintiff's inquiry about intervening.  Finally, Defendant City argues that the actions complained of did not involve the implementation of a policy or custom of the City.  Defendants conclude this is insufficient evidence to support Plaintiff's claim.

*2. Plaintiff's Argument*

Plaintiff argues that he specifically asked Defendants Stockwell and Kunkler to overrule Defendant Storms' decision to require that the building plans for a home he was building for his client Cisneros be reengineered.  Plaintiff states the Defendants did not do so. Plaintiff concludes that whether or not Defendants Stockwell and Kunkler knew of and were involved in the decisions concerning this building project is a disputed question of fact.  Ct. Rec. 40 at 18-19.

As to Defendant City's liability, Plaintiff argues that Defendant Stockwell held the executive and administrative authority in the City. Under state law, Plaintiff asserts, Defendant Stockwell has the final policy making authority for executive and administrative decisions and actions.  Id. at 19.  Plaintiff concludes that Defendant Stockwell's

decision that he should reengineer the plans constitutes a decision

for which Defendant City may be held liable.

   *3. Court's Analysis*

      a.  Equal Protection

   To state a claim under 42 U.S.C. § 1983 for a violation of the

Equal Protection Clause of the Fourteenth Amendment, "a plaintiff must

show that the defendants acted with an intent or purpose to

discriminate against the plaintiff based upon membership in a

protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th

Cir. 2001).  In order to make out an equal protection violation, a

plaintiff must prove four elements:

> (1) the municipal defendants treated [him] differently
> from others similarly situated; (2) this unequal
> treatment was based on an impermissible
> classification; (3) the municipal defendants acted
> with discriminatory intent in applying this
> classification; and (4) [plaintiff] suffered injury as
> a result of the discriminatory classification.

*Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1137 (E. D. Cal. 2004).

Here Plaintiff has not alleged any membership in a protected class,

nor has he alleged that Defendants treated him differently from others

similarly situated.  Plaintiff asserts no facts that would suggest he

was subject to unequal treatment or discriminatory classification.

Plaintiff wholly fails to allege any facts that would support any of

the elements of an equal protection claim.  Defendants have presented

evidence to show that Plaintiff was not treated differently than other

builders.  Ct. Rec. 32 at 8, ¶¶ 23-25.

      b.  Substantive Due Process

   The Court finds Defendants' argument convincing.  As discussed

above with respect to Plaintiff's other substantive due process claim, the Ninth Circuit has stated that substantive due process protects individuals from arbitrary deprivation of their liberty by government. The [Supreme] Court has repeatedly spoken of the cognizable level of executive abuse of power as that which shocks the conscience. Only the most egregious official conduct can be said to be arbitrary in a constitutional sense. Thus, in order to establish a constitutional violation based on substantive due process, Plaintiff must show both a deprivation of his liberty and conscience shocking behavior by the government. *Britain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).

Again, Plaintiff has failed to meet the heavy burden of this shocks-the-conscience standard. There is no evidence of a substantive due process violation. Defendants are entitled to summary judgment on Plaintiff's §1983 claim alleging an equal protection violation and a substantive due process violation stemming from Defendant City's request that Plaintiff reengineer the plans for his Cisneros building project.

**D. Freedom of Speech Claim**

*1. Defendants' Argument*

Plaintiff alleges a violation of his first amendment right of free speech by Defendants City and Kunkler, stemming from removal of signs and misdemeanor charges. These arguments are more fully developed below.

a. Removal of Signs

Defendants state that Plaintiff does not have a constitutional right to place unpermitted signs in a public right-of-way. The first

incident Plaintiff complains of took place on January 5, 2006, where
City officials removed a sign critical of the City.  Defendants argue
that the sign was removed from the City right-of-way, along with other
fencing posts and cement, all of which were placed after Plaintiff was
advised to remove the items from what Defendants understood to be a
public right-of way.  Ct. Rec. 33 at 6-7.  Further, Defendants argue,
the signs and fencing were removed pursuant to their statutory duties
and authority pursuant to SMC[8] 15.36.190 and 15.62.010.  Defendants
argue that SMC 12.40.030 mandates that the City "shall cause
[unpermitted signs installed in a City right-of-way] to be removed.
Additionally, according to Defendants, SMC 15.36.190B and 15.36.220
authorized the City to remove immediately, without notice, unlawful
signs in public right-of-ways, on public streets, sidewalks, power
poles, telephone poles, street signs, or other public property.  Ct.
Rec. 33 at 7.

Defendants also assert, SMC 15.62.010 establishes height and
location restrictions on fences and does not permit a property owner
to erect a fence in a public right-of-way.  Ct. Rec. 33 at 7-9.

b.  Misdemeanor Charges

The second and third incidents comprising the alleged freedom of
speech violation involved Plaintiff being charged with misdemeanors
for knowingly violating the sign ordinance.  Defendants state
Plaintiff had been advised prior to being charged of his violations
and refused to comply with the law.  Defendants further assert there
was clearly probable cause for the charges, Plaintiff was given an

---

[8]Sunnyside Municipal Code.

ORDER - 19

opportunity to remove enough of the signs to bring him in accordance with the statute, but he refused.  Plaintiff was not told he had to change the content, just that he had to comply with the size and area restrictions.  Defendants state the misdemeanor charges had nothing to do with the content of the signs.  Further, Defendants explain, the City's sign ordinance does not prohibit the type of message displayed by Plaintiff, but it does regulate the size and number of signs one can have on their property.

           c.  Defendant Kunkler and Absolute Immunity

     Defendants argue that Defendant Kunkler, acting as the prosecuting attorney for Defendant City, has absolute immunity in charging Plaintiff with a criminal misdemeanor.  Citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 674, 678 (9th Cir. 1984), Defendants argue that the immunity applies "even if it leaves 'the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.'"  Ct. Rec. 33 at 9 (citations omitted).

           d.  Municipal Liability

     Defendants argue that municipalities are liable for violations of civil rights under §1983 if such violations result from the "execution of a government's policy or custom" under *Monell.*[9]  Defendants argue that Plaintiff has not plead or alleged that liability is based upon some policy or custom.  Ct. Rec. 33 at 8.  Defendants conclude that Plaintiff was not deprived of a constitutional right.  Rather

---

[9]*Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S. Ct 2018, 56 L. Ed. 2d 611 (1978).

ORDER - 20

1    Plaintiff was told prior to putting signs up, not to erect signs more

2    than 20 feet from the property line.  Plaintiff elected to disobey the

3    law according to Defendants.  Defendants request that the Court

4    dismiss all claims against Defendant City under *Monell*.

5        *2. Plaintiff's Argument*

6        In response to Defendants' argument, Plaintiff asserts that

7    Defendant City's prosecution of misdemeanor charges against him

8    occurred as the result of a decision officially adopted and

9    promulgated by the City's officers.  Under *Monell*, Plaintiff argues, a

10   municipal government may be sued directly under § 1983 where the

11   action that is alleged to be unconstitutional implements or executes a

12   policy statement, ordinance, regulation, or decision officially

13   adopted and promulgated by that body's officers.  *Monell v. Dept. of*

14   *Social Services*, 436 U.S. 658, 690, 98 S. Ct 2018, 56 L. Ed. 2d 611

15   (1978).  Ct. Rec. 40 at 13.

16       To support his argument Plaintiff asserts the e-mail exchange

17   between Defendants Mayor Prilucik and City Manager Stockwell, provides

18   evidence that the City manager made the decision to prosecute

19   Plaintiff under the sign ordinance.  Whether or not a particular

20   official has final policy making authority for purposes of § 1983 is a

21   question of state law.  *Jett v. Dallas Independent School Dist.*, 491

22   U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).  Under

23   Washington law, in a council-manager form of government, all executive

24   and administrative authority is vested in the city manager.  RCW

25   35.18.060.  The City manager has final policy making authority to

26   decide to prosecute alleged violations of city ordinances; therefore,

ORDER - 21

1  the evidence that the City manager decided to prosecute Plaintiff

2  criminally is sufficient to show that the decision was a policy of

3  Defendant City.  Plaintiff argues that at a minimum, whether or not a

4  particular official has final policy making authority for purposes of

5  §1983, is a disputed issue of fact here.  Ct. Rec. 40 at 13-14.

6       Plaintiff argues that the e-mail exchange provides evidence that

7  the City manager made the decision to prosecute him under the sign

8  ordinance.  Plaintiff concludes that Defendant Stockwell's e-mails

9  with Defendant Prilucik establish a factual dispute as to whether the

10 misdemeanor charges were brought against Plaintiff to chill his

11 posting of signs critical of Defendants, thus depriving him of his

12 First Amendment rights.

13      In regards to the prosecutorial immunity Defendants assert for

14 Defendant Kunkler, Plaintiff argues that under *Van de Kamp v.*

15 *Goldstein*, 129 S. Ct. 855, 861 (2009) this immunity does not apply to

16 investigative activities.  Plaintiff concludes that the nature and

17 extent of Defendant Kunkler's involvement in the investigation and

18 deliberations of whether to prosecute Plaintiff remain open questions

19 of fact precluding summary judgment dismissal of this claim.  Ct. Rec.

20 40 at 15-16.

21      *3. Court's Analysis*

22      While the First Amendment does not guarantee the right to employ

23 every conceivable method of communication at all times and in all

24 places, *Heffron v. International Society for Krishna Consciousness,*

25 *Inc.,* 452 U.S. 640, 647 (1981), a restriction on expressive activity

26 may be invalid if the remaining modes of communication are inadequate.

1  *See, e.g., United States v. Grace*, 461 U.S. 171, 177 (1983); Heffron,

2  452 U.S., at 654-655; *Consolidated Edison Co. v. Public Service*

3  *Comm'n*, 447 U.S. 530, 535 (1980); *Linmark Associates, Inc. v.*

4  *Willingboro*, 431 U.S. 85, 93(1977).

5      Private property affords the strongest protection to free speech.

6  *Metro Display Advertising, Inc. v. City of Victorville*, 143 F.3d 1191,

7  1195 (9th Cir. 1998).  The government cannot regulate a private

8  individual's speech in order to promote or restrain promotion of that

9  individual's viewpoint.  "It is axiomatic that the government may not

10 regulate speech based on its substantive content or the message it

11 conveys."  *Rosenberger v. Rector and Visitors*, 515 U.S. 819, 827-29,

12 115 S. Ct. 2510, 2516, 132 L. Ed. 2d 700 (1995).  *And* see *R.A.V. v.*

13 *St. Paul*, 505 U.S. 377, 391-92, 112 S. Ct. 2538, 2547-48, 120 L. Ed.

14 2d 305 (1992); cf. *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502 (9th

15 Cir. 1988).  *Metro* at 1195.

16     The facts indicate that Plaintiff was not asked to change the

17 content of the signs; he was told that he had to comply with the size

18 and area restrictions.  Defendants state that the misdemeanor charges

19 had nothing to do with the content of the signs.  Plaintiff was able

20 to place signs on his private property, with whatever content he

21 wished, so long as the size and area restrictions were met.  The Court

22 finds Plaintiff's constitutional rights were not violated with respect

23 to his freedom of speech under the First Amendment.  Summary judgment

24 is granted in favor of Defendants with respect to this claim.

25     As for prosecutorial immunity for Defendant Kunkler, the Court

26 finds that he is immune from liability for filing misdemeanor charges

against Plaintiff.  Defendant Kunkler was acting as a prosecutor and is entitled to absolute immunity.

**E. Conspiracy**

Plaintiff alleges in his conspiracy claim that Defendants Kunkler, Storms and Stockwell conspired to impose unnecessary and costly building requirements on Plaintiff's construction jobs within Sunnyside for purposes of driving up his costs and rendering him uncompetitive with other builders.  Ct. Rec. 40 at 16.

*1. Defendants' Argument*

Defendants argue, citing Ninth Circuit cases,[10] that Plaintiff has failed to produce evidence of a meeting of the minds or any concerted action intended to accomplish some unlawful objective.  Ct. Rec. 44 at 4.  Defendants note that Defendants Kunkler and Stockwell had nothing to do with how Plaintiff was treated by the planning department.  Defendants conclude that there is no evidence of conspiracy to prevent Plaintiff from working competitively in Sunnyside.  Ct. Rec. 33 at 12.

*2. Plaintiff's Argument*

Plaintiff responds that there is a genuine issue of material fact regarding whether there was a conspiracy.  Ct. Rec. 40 at 16. Plaintiff, however, does not elaborate on his specific theory or discuss what material facts are in dispute precluding summary judgment.

*3.  Court's Analysis*

To prevail on a claim of civil rights conspiracy, Plaintiffs must

---

[10]*United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989); *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

ORDER - 24

allege and prove four elements:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Keenan v. Allan*, 889 F. Supp. 1320, 1364 (E. D. Wash. 1995), *aff'd.*, 91 F.3d 1275 (9th Cir. 1996).

Having found no equal protection deprivation or other constitutional violation, the conspiracy claim cannot stand.  The Court grants Defendants' Motion for Summary Judgment as to Plaintiff's conspiracy claim.

**IT IS ORDERED** that:

1.  Defendants' Motion for Summary Judgment, **Ct. Rec. 31**, is **GRANTED** and judgment is entered in favor of Defendants on all the claims.

**IT IS SO ORDERED.**  The District Executive is directed to enter judgment accordingly, forward copies of the judgment and this order to counsel, and **CLOSE** this file.

**DATED** this 16th day of October, 2009.

*s/Lonny R. Suko*

LONNY R. SUKO
CHIEF UNITED STATES DISTRICT JUDGE